**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| IN RE BANK OF AMERICA MORTGAGE | ) | Lead Case No. 1:11-cv-02475-WHP |
| SERVICING SHAREHOLDER | ) | |
| DERIVATIVE LITIGATION | ) | MASTER FILE |
| | ) | |
| | ) | |
| This Document Relates To: | ) | |
| ALL ACTIONS | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**SEEKING VOLUNTARY DISMISSAL WITHOUT PREJUDICE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................... 1

PROCEDURAL HISTORY...................................................................................... 3

ARGUMENT ......................................................................................................... 7

    I.    Voluntary Dismissal Motions Should Be Granted Unless
        Defendants Will Suffer Substantial Prejudice ....................................... 7

    II.   Plaintiffs Did Not Delay In Bringing This Motion
        And Their Conduct Has At All Times Been Proper ................................. 7

    III.  Defendants Will Suffer No Prejudice If The Motion Is Granted ............ 9

    IV.  Plaintiffs Have A Compelling Justification For Dismissal:
        The Court Lacks Subject Matter Jurisdiction ...................................... 10

        A. There Are No Federal Claims ......................................................... 10

        B. There Is Incomplete Diversity Among The Parties........................ 11

        C. Asserting Supplemental Jurisdiction Would Be Improper............ 11

            1.    Comity-related Considerations Strongly Favor Dismissal............ 13

            2.    Judicial Economy, Fairness And Convenience
                Support Dismissal...................................................................... 14

                a. Plaintiffs' Claims Are Most Related To Actions Pending
                   In States Across The Country .................................................. 15

                b. The CAC Has Virtually No Overlap With *PPSERS* ............... 16

            3.    This Court's Prior Jurisprudence Supports Dismissal.................... 17

    V.   Plaintiffs Are Willing To Have Dismissal Conditioned On
        Reasonable Requirements................................................................... 18

    CONCLUSION................................................................................................ 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Ahler v. City of New York*,
No. 93 Civ. 0056, 1993 U.S. Dist. LEXIS 12680 (S.D.N.Y. Sept. 13, 1993) ...............9

*Banco Central de Paraguay v. Paraguay Humanitarian Foundation, Inc.*,
No. 01 Civ. 9649, 2006 U.S. Dist. LEXIS 87093 (S.D.N.Y. Nov. 29, 2006) ..............7

*Carnegie-Mellon University v. Cohill*,
484 U.S. 343 (1988).........................................................................................11

*Catanzano v. Wing*,
277 F.3d 99 (2d Cir. 2001)..................................................................................7

*Cedric Kushner Promotions Ltd. v. King*,
No. 09 Civ. 6859, 1999 U.S. Dist. Lexis 14934 (S.D.N.Y. Sept. 28, 1999)...............17

*D'Alto v. Dahon California, Inc.*,
100 F.3d 281 (2d Cir. 1996)..................................................................................9

*In re English Seafood (USA), Inc.*,
743 F. Supp. 281 (D. Del. 1990)..........................................................................13

*Gilmore v. Gilmore*,
No. 09 civ. 6230, 2011 U.S. Dist. LEXIS 99441 (S.D.N.Y. Sept. 1, 2011)...............17

*Kolari v. New York-Presbyterian Hospital*,
455 F.3d 118 (2006)...................................................................................... *passim*

*Omega Institute v. Universal Sales System, Inc.*,
No. 08-CV-6473, 2010 U.S. Dist. LEXIS 10296 (W.D.N.Y. Feb. 5, 2010) ................8

*Rockwell International Corp. v. U.S.*,
549 U.S. 457 (2007)....................................................................................10, 11

*Tradition Chile Agentes de Valores LTDA v. ICAP Secs. USA LLC*, No. 09 Civ.
10343, 2010 U.S. Dist. LEXIS 123673 (S.D.N.Y. Nov. 5, 2010) .............................17

*Turedi v. Coca-Cola Co.*,
343 Fed. Appx. 623, 625 (2d Cir. 2009)..................................................................10

*United Mine Workers of America v. Gibbs*,
383 U.S. 715 (1966)..........................................................................................11

*Zagano v. Fordham University*,
 900 F.2d 12 (2d Cir. 1990)........................................................................7

## STATE CASES

*Rosen v. Wind River System, Inc.*,
 2009 Del. Ch. LEXIS 114 (Del. Ch. Jun. 26, 2009) ..................................13

## DOCKETED CASES

*America European Insurance Co. and Rutgers Casualty Insurance Co. v.*
 *Moynihan, et al.*,
 No. 1:11-cv-06851 (S.D.N.Y.)....................................................................6

*America European Insurance Co. v. Holliday, et al.*,
 No. 11-CVS-4569 (N.C. Sup. Ct.) ..............................................................4

*Cinotto v. Noksi*,
 No. 11 CV 2475 (S.D.N.Y.)......................................................................4, 5

*Delman v. Gifford, et al.*,
 No. 11 Civ. 6749 (S.D.N.Y.) .......................................................................5

*Cottrell v. Gifford, et al.*,
 No. 1:11-cv-11312 (D. Mass.) .....................................................................5

*Gastineau v. Gifford, et al.*,
 No. 1:11-cv-11096 (D. Mass.) .....................................................................5

*MSS 12/09 Trust Dated 12/23/09 v. Moynihan, et al.*,
 No. 11-CVS-6236 (N.C. Sup. Ct.) ..............................................................4

*O'Hare v. Moynihan*,
 No. 11103729 (N.Y. Sup. N.Y Cty.) ...........................................................4

*Penns. Public School Employees' Retirement Sys.v. Bank of America Corp.*,
 No. 11-CV-00733 ("*PPSERS*")...................................................................3

## FEDERAL STATUTES

28 U.S.C. §1367(a) ............................................................................................11

## STATE STATUTES

8 Del. Code Ann. § 145 (indemnification) .......................................................11

Plaintiffs American European Insurance Company, Rutgers Casualty Insurance Company, Jean Marie Cinotto, Doris Gastineau, John H. Cottrell, and Richard Delman (collectively "Plaintiffs"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion Seeking Voluntary Dismissal Without Prejudice of this action, so that it may be re-filed in Delaware state court.

## INTRODUCTION

Plaintiffs seek to voluntarily dismiss this consolidated action, at this early stage in the litigation, because the Court lacks subject matter jurisdiction over the claims Plaintiffs seek to pursue. Those claims would be most appropriately litigated in Delaware state court, and Defendants will suffer no prejudice if they are litigated in that forum.

This action consolidated five different derivative lawsuits that were previously filed in this Court. Those underlying actions alleged a variety of state and federal claims against various members of Bank of America's Board of Directors for misconduct related to the Company's mortgage foreclosure and modification-related illegality. Following consolidation of these actions in November 2011, Plaintiffs' counsel conducted extensive legal and factual research in an effort to determine which derivative claims should be asserted in a consolidated complaint.

After extensive discussions concerning this issue, and just before Plaintiffs' consolidated complaint was due, Lead Plaintiffs' Counsel made the final decision that it was not in the interests of Nominal Defendant Bank of America to allege any federal law claims. As a result, Plaintiffs' First Consolidated Amended Verified Shareholder Derivative Complaint ("CAC"), filed on December 21, 2011, alleges only two Delaware law-based claims. It does not give rise to federal question jurisdiction or diversity jurisdiction. Moreover, decisions issued by the Second Circuit and this Court make it clear that there is no basis for asserting supplemental

jurisdiction over the CAC. In light of these facts, *the day after filing the CAC*, Plaintiffs informed Defendants and the Court that they would seek to voluntarily dismiss their claims.

Delaware has a significantly greater interest in the claims asserted in the CAC than does this Court. Delaware is Bank of America's state of incorporation and Delaware law governs the Board's fiduciary duties. Delaware courts have repeatedly indicated that they strongly desire to adjudicate cases that implicate Delaware state law, particularly as regards a high profile case such as this one. This case will be closely followed by the Delaware bar and by other financial institutions incorporated in Delaware and their boards of directors.

In contrast, this Court has no unique interest in Plaintiffs' claims. No material portion of the misconduct that Plaintiffs allege occurred in New York. The illegal foreclosure and modification-related misconduct that is at the core of Plaintiffs' claims was national in scope. Further, North Carolina is the location of the Company's headquarters, its home loans segment, and likely a majority of the Board's deliberations. Moreover, the deluge of civil litigation and investigations that this illegal conduct precipitated is in no way centered in New York. Congress and federal regulators based principally out of Washington, DC are conducting highly relevant investigations. So, too, are State Attorneys General ("AG"s), some of whom, like injured homeowners, have initiated litigation in state courts across the country. Coordination with these other proceedings is necessary and likely already proceeding.

Plaintiffs' claims also lack any material overlap – in substance, probable discovery, or likely motion practice – with the *Pennsylvania Public School Employees' Ret. Sys. v. Bank of America Corp.*, No. 11-CV-00733 ("*PPSERS*") securities fraud class action pending before this Court. Unlike *PPSERS,* this action does not plead any federal (or state) securities claims and has nothing to do with alleged misstatements to securities investors or financial accounting

improprieties. This action names only B of A Board members as defendants. *PPSERS* names B of A executives, an outside auditor, and 27 financial institutions that served as underwriters of B of A securities. This action does not concern improprieties in the residential loan origination (when a mortgage is first given to a borrower) or securitization (when a mortgage is bundled with others and sold to investors) processes. *PPSERS* does. Put simply, this action has no meaningful overlap with *PPSERS* or with any other litigation concerning residential mortgage-backed securities investments, mortgage origination or mortgage securitization issues.

Voluntary dismissal motions are routinely granted. Plaintiffs' motion should be no exception. Plaintiffs brought this motion immediately after deciding not to advance any federal claims. They did not keep Defendants or the Court in the dark about their intentions. Moreover, the efforts already expended by the Court and Defendants on this case were not wasted. They resulted in the consolidation and coordination of Plaintiffs' disparate claims, which Plaintiffs intend to honor if they are allowed to prosecute their Delaware law claims in a Delaware state court.

## PROCEDURAL HISTORY

On March 8 and March 28, 2011, Lead Counsel in this action filed in the North Carolina Business Court the first and second derivative lawsuits to be brought anywhere in the country, alleging that B of A's Board breached its fiduciary duties by knowingly authorizing the Company's improper and illegal mishandling of residential loan modifications, foreclosures, and bankruptcies. *See Am. European Ins. Co. v. Holliday, et al.*, No. 11-CVS-4569 (N.C. Sup. Ct.) *and MSS 12/09 Trust Dated 12/23/09 v. Moynihan, et al.*, No. 11-CVS-6236 (N.C. Sup. Ct.) (together, the "North Carolina Actions"). These complaints raised *only* state law claims, chief among them a claim for breach of fiduciary duty.

The third derivative lawsuit filed was *O'Hare v. Moynihan*, No. 11103729 (N.Y. Sup. Ct.) ("*O'Hare*"), filed in New York state court at the end of March 2011. It likewise raised only state law claims, including breach of fiduciary duty and contribution and indemnification. Counsel in *O'Hare* voluntarily dismissed in deference to the North Carolina Actions.

On April 12, 2011, *Cinotto v. Noksi*, No. 11 CV 2475 (S.D.N.Y.) ("*Cinotto*") became the fourth derivative lawsuit filed. It was the first to be filed in this Court. Unlike Lead Counsel's North Carolina Actions, *Cinotto* originally focused on "derivative" claims based on federal securities law violations due to alleged accounting violations and misrepresentations to investors. *Cinotto*'s Amended Complaint, filed September 23, 2011, raised "derivative" claims under the Securities Exchange Act §§10(b), 14(a), and 20(a) and SEC Rules 10b-5 and 14a-9. Counsel in *Cinotto* tagged it as related to the *PPSERS* case on the civil cover sheet due to the overlap of those securities-related claims. As a corollary, *Cinotto* also pled state law claims, including breach of fiduciary duty. *Cinotto* pled jurisdiction based primarily on federal question and secondarily via diversity by omitting to name a Board member from Texas.

On June 7, 2011, the North Carolina Business Court consolidated the North Carolina Actions and, like this Court, appointed Pomerantz as Lead Counsel. The next day, June 8, 2011, Defendants moved to stay Lead Counsel's North Carolina Actions, in deference to *Cinotto*.

On June 17, 2011 and July 22, 2011, the fifth and sixth derivative actions were filed in the District of Massachusetts. *See Gastineau v. Gifford, et al.*, No. 1:11-cv-11096 (D. Mass.); *Cottrell v. Gifford, et al.*, No. 1:11-cv-11312 (D. Mass.). Like *Cinotto*, these complaints raised "derivative" claims under §§14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9, and alongside, a breach of fiduciary duty claim. They also pled jurisdiction in the same way as did

*Cinotto*. However, *Cottrell* in actuality lacked total diversity, because both the plaintiff and one Board member defendant are Texas residents.

On August 25, 2011, the North Carolina Business Court stayed the North Carolina Actions in deference to *Cinotto*. The key portion of the Court's order found (with emphasis added) that this Court was "the only forum where the Federal Securities Action [*PPSERS*] and both **the Federal Derivative Claims** and State Derivative Claims" could be litigated.

On September 19, 2011, the District of Massachusetts granted Defendants' motion to transfer venue of the *Gastineau* and *Cottrell* actions to this Court. The order granting this motion found that both actions were "substantially similar" to the prior-filed *Cinotto* action, *inter alia*, because all three complaints alleged that defendants "either made or allowed inaccurate and/or misleading statements in public filings."

On September 27, 2011, the seventh derivative action was filed in this Court. *See Delman v. Gifford, et al.*¸ No. 11 Civ. 6749 (S.D.N.Y.). Like *Cinotto*, it raised "derivative" claims under §10(b) and Rule 10b-5, and alongside, a breach of fiduciary duty claim. It pled jurisdiction as did *Cinotto*, creating diversity by omitting to name a non-diverse Board member.

On September 29, 2011, Lead Counsel re-filed its case in this Court, with one of the two original North Carolina plaintiffs. *See Am. European Ins. Co. & Rutgers Cas. Ins. Co. v. Moynihan, et al.*, No. 1:11-cv-06851 (S.D.N.Y.). Consistent with Lead Counsel's original North Carolina complaints, its complaint filed in this Court pled **only** state law claims focused exclusively on B of A's improper and illegal handling of residential loan modifications and foreclosures. It pled jurisdiction based on diversity.

In late October 2011, Plaintiffs in the various actions sought a Court order consolidating those actions and appointing three of Plaintiffs' counsel as Co-Lead Counsel. The Court entered

such an order on November 4, 2011 (Docket No. 27).  On November 30, 2011, the Court convened a telephone conference and instructed Plaintiffs' counsel that it wanted a single firm to serve as Lead Counsel and for the consolidated complaint to be filed promptly.  On December 12, 2011, this Court entered its Revised Order of Consolidation (Docket No. 31) ("Consolidation Order"), appointing Pomerantz as sole Lead Counsel and ordering Plaintiffs to file a Consolidated Complaint by December 21, 2011.  It stated in ¶6 that "The Consolidated Complaint shall be the operative complaint and shall supersede all complaints filed in any of the actions consolidated herein."

On December 21, 2011, after extensive discussions among counsel for the Plaintiffs about which claims to allege, Plaintiffs filed the CAC.  Consistent with Lead Counsel's long-held view, the CAC includes *only* state law claims, the centerpiece of which is a breach of fiduciary duty claim against the Board for knowingly permitting B of A to improperly and illegally conduct residential loan modifications and foreclosures.

On December 22, 2011, Plaintiffs submitted a letter (Docket No. 34) to the Court requesting a pre-motion conference in advance of filing this Motion.  Defendants submitted a December 30, 2011 responsive letter (Docket No. 46) ("12/30/11 Letter") outlining three arguments purportedly demonstrating continued federal jurisdiction.  On January 6, 2012, pursuant to ¶6 of the Consolidation Order, Defendants submitted a letter (Docket No. 45) outlining their arguments regarding a motion to dismiss.  On January 13, 2012, pursuant to ¶6 of the Consolidation Order, Plaintiffs submitted a letter (Docket No. 47) ("1/13/12 Letter") responding to Defendants' letters.

On January 19, 2012, this Court held the pre-motion conference regarding this Motion (the "Pre-Motion Conference").  This Motion followed.

**ARGUMENT**

I.     **Voluntary Dismissal Motions Should Be Granted Unless Defendants Will Suffer Substantial Prejudice**

The presumption in this Circuit is that "a court should grant a dismissal pursuant to Rule 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a result." *Banco Central de Paraguay v. Paraguay Humanitarian Foundation, Inc.*, No. 01 Civ. 9649, 2006 U.S. Dist. LEXIS 87093, at *6 (S.D.N.Y. Nov. 29, 2006) (citations omitted). "Starting a litigation all over again does not constitute legal prejudice." *Catanzano v. Wing*, 277 F.3d 99, 110 (2d Cir. 2001).

In *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990), the Second Circuit established five factors that a court should consider in deciding whether a defendant will suffer legal prejudice. These include: (1) the plaintiff's diligence in bringing the motion; (2) any "undue vexatiousness" on the plaintiff's part; (3) the extent to which the suit has progressed including the defendant's effort and expense in preparation for trial; (4) the duplicative expense of re-litigation; and (5) the adequacy of plaintiff's explanation for the need to dismiss. *Id*. All five factors weigh heavily in favor of granting this Motion.

II.    **Plaintiffs Did Not Delay In Bringing This Motion And Their Conduct Has At All Times Been Proper**

Plaintiffs and their counsel have acted in an above-board manner throughout this litigation. They have been motivated by nothing other than advancing the interests of Bank of America and holding the Board members accountable for the damages they caused the Company to incur. Plaintiffs brought this motion immediately after determining that they did not wish to pursue federal claims and that the Court lacked subject matter jurisdiction over their state law claims. The first two *Zagano* factors suggest that the motion should be granted.

7

The pre-consolidation complaints filed by the individual Plaintiffs reflected their respective counsels' best judgments – at the time and without the benefit of consultation with the other Plaintiffs' counsel -- about which claims to assert and which Defendants to name. Plaintiffs sought consolidation of these underlying actions in late October, 2011. In the weeks thereafter, Plaintiffs' counsel had several discussions about, and performed extensive research concerning, which claims should be asserted in a consolidated complaint and which should not. These conversations intensified after the Court entered its December 12, 2011 Consolidation Order, which appointed Pomerantz sole Lead Counsel and imposed a December 21, 2011 deadline for the filing of the CAC. Under the leadership of Lead Counsel, and as reflected in the CAC filed on December 21, 2011, Plaintiffs made the collective decision that it was not in the interests of B of A to pursue any of the federal claims that several of them had alleged in their initial complaints. This decision is not particularly surprising. Prior to being appointed Lead Plaintiffs' Counsel, Pomerantz filed three different derivative complaints concerning the matters at issue – two in North Carolina and one in this Court. None of them asserted federal claims.

*The very next day* after filing the CAC, Plaintiffs notified the Court and Defendants that they desired to voluntarily dismiss their claims because the Court lacked subject matter jurisdiction over them. Plaintiffs did not delay in bringing this motion and there is nothing inappropriate about their conduct. *See Omega Inst. v. Universal Sales Sys., Inc.*, No. 08-CV-6473, 2010 U.S. Dist. LEXIS 10296, at *8 (W.D.N.Y. Feb. 5, 2010) (where motion for dismissal was filed "less than a year after the action began," where very little discovery or proceedings had taken place, and where there was no evidence of plaintiffs being motivated by an improper purpose, dismissal was proper).

## III. Defendants Will Suffer No Prejudice If the Motion Is Granted

Granting this motion will not prejudice Defendants. This case is in its infancy. No motions to dismiss have been filed and no discovery has taken place. *See Ahler v. City of New York*, No. 93 Civ. 0056, 1993 U.S. Dist. LEXIS 12680, at *2-4 (S.D.N.Y. Sept. 13, 1993) (Sotomayor, J.) (granting motion to dismiss brought in early stages of litigation, before discovery, over defendants' stated preference to litigate in a federal forum). Moreover, the time and expense exerted by Defendants in this case has not been wasted. Plaintiffs have agreed to consolidate their disparate claims and proceed as a united group. Moreover, Defendants will incur no additional costs if this case is litigated in Delaware. *See, e.g., D'Alto v. Dahon California, Inc.*, 100 F.3d 281, 283 (2d Cir. 1996) (prospect of starting a litigation all over again does not constitute legal prejudice). In light of these facts, the next two *Zagano* factors (state of litigation at time of motion and cost of re-litigation) also indicate that Defendants will not suffer prejudice if Plaintiffs' Motion is granted.

Indeed, and for the reasons set forth in greater detail below, it is hard to understand how Defendants would be prejudiced at all if Plaintiffs' Motion is granted. Plaintiffs' decision not to allege that Defendants violated federal law cannot possibly be prejudicial -- Defendants' ought to be pleased. Moreover, Plaintiffs' desire to dismiss does not constitute some type of sinister attempt to forum shop. Forum shopping involves "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum…." *Turedi v. Coca-Cola Co.*, 343 Fed. Appx. 623, 625 (2d Cir. 2009) (*quoting Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001)). By proceeding in the Delaware

Chancery Court, there will be no change in law, no generous jury (indeed, no jury at all), and no great inconvenience to either Plaintiffs or Defendants. There is no discernible special benefit Plaintiffs would enjoy by litigating in Delaware rather than in federal court. In fact, there is a plain detriment -- the loss of the right to a jury trial. Moreover, whereas Lead Counsel is based in New York City, neither it nor any other firm representing Plaintiffs is based in Delaware, making that forum actually slightly less convenient to Plaintiffs.

## IV. Plaintiffs Have A Compelling Justification For Dismissal: The Court Lacks Subject Matter Jurisdiction

### A. There Are No Federal Claims

Plaintiffs filed the CAC on December 21, 2011. Pursuant to ¶6 of this Court's Consolidation Order, the CAC is the "operative complaint" that "shall supercede all complaints filed in any of the actions consolidated herein." Thus, subject matter jurisdiction is assessed only by reference to the CAC. As the Supreme Court has held, subject matter jurisdiction is to be assessed depending on the "state of things" at the time the operative complaint is filed. *Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 473-74 (2007). Just as demonstration that original allegations supporting jurisdiction were false will defeat federal jurisdiction, "[s]o also will withdrawal of those allegations, unless they are replaced by others that establish jurisdiction." *Id*. Thus, "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Id*.

The CAC raises no federal claims. Count I asserts breach of fiduciary duty claims against the Board members. Those claims arise out of and are governed by Delaware law. Count II seeks contribution and indemnification from the Board. These claims also arise out of Delaware law, 8 Del. Code Ann. § 145 (indemnification) *and* 10 Del. C. § 6301 *et seq*. (contribution), and do not seek to recover damages incurred by B of A as a result of shareholder

suits or misstatements by Defendants.  These are the only claims alleged in the CAC.  Thus, the Court lacks federal question jurisdiction.

### B.  There Is Incomplete Diversity Among The Parties

The CAC does nothing to artificially defeat (or create) federal jurisdiction. Each of the Plaintiffs who filed consolidated actions is named as a plaintiff in the CAC.  All of the B of A Board members who served during the relevant period are named as defendants.  In light of the citizenship of those parties, complete diversity is also lacking.  Whether any given Plaintiff independently pled (correctly or incorrectly) diversity in its pre-consolidation complaint is irrelevant to the analysis under *Rockwell*.  *See* 549 U.S. at 473-74.

### C.  Asserting Supplemental Jurisdiction Would Be Improper

There is no basis for asserting supplemental jurisdiction over Plaintiffs' claims either. Under *Rockwell*, the CAC is the document to which the Court must look in determining jurisdiction.  The CAC fails to allege any federal claims and demonstrates incomplete diversity among the parties.  As such, there cannot be supplemental jurisdiction under 28 U.S.C. §1367(a) because there is no jurisdiction to "supplement."

Moreover, even if supplemental jurisdiction is theoretically available, controlling authority indicates that exercising it in this case would be improper.  The applicability of supplemental jurisdiction under §1367 is governed by the Second Circuit's decision in *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118 (2006), which interpreted and applied seminal Supreme Court decisions in *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) and *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).  In passages quoted in *Kolari*, the Supreme Court stated:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed

reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution by state tribunals.

*Gibbs*, 383 U.S. at 726, *quoted in Kolari*, 455 F.3d at 122. The applicability of supplemental jurisdiction "remains open throughout the litigation" and "dismissal of [a] state claim might … be merited" at any point if "pretrial procedures or even the trial itself" raises a concern such as "hegemony of state law claims" or "jury confusion in treating divergent legal theories of relief." *Id.* at 726-27. Thus,

Under *Gibbs*, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages, and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*Cohill*, 484 U.S. at 350. For these reasons, "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered ...will point toward declining to exercise supplemental jurisdiction over the remaining state-law claims." *Id.* at 350 n.7, *quoted in Kolari*, 455 F.3d at 122.

Applying these standards, the *Kolari* court vacated an order of the district court exercising supplemental jurisdiction over state law claims following dismissal of federal claims. 455 F.3d at 124 (remanding for entry of an order of dismissal without prejudice). The *Kolari* court reached this decision despite the fact that considerable time and resources had been expended by the parties and the district court, both in consolidating separately-filed cases and in litigating procedural and dispositive motions, prior to entry of the district court's later-vacated

order. *Id.* at 119-121. Nevertheless, the Second Circuit found the circumstances to be the "usual case," in that:

> Plaintiffs' federal-law claims were eliminated on a motion to dismiss, prior to the investment of significant judicial resources, and we can discern no extraordinary inconvenience or inequity occasioned by permitting the claims to be refiled in state court where they will be afforded a "surer-footed reading of applicable law."

*Id.* at 123, *quoting Cohill*, 484 U.S. at 350 n.7 *and Gibbs*, 383 U.S. at 726.

The longstanding federal policy announced in *Gibbs*, *Cohill* and *Kolari* leads to one inescapable conclusion: there is no basis for asserting supplemental jurisdiction over Plaintiffs' state law claims in this case.

### 1. Comity-related Considerations Strongly Favor Dismissal

By re-filing in Delaware, Plaintiffs will pursue their claims in the jurisdiction with the greatest interest in this litigation. Delaware is the jurisdiction in which B of A is incorporated and which will provide the applicable substantive law. Moreover, given the seriousness of the claims asserted by Plaintiffs and B of A's status as the nation's largest bank and mortgage servicer, this case will be closely watched by the Delaware bar and the boards of other financial institutions incorporated in Delaware. Delaware state courts are renowned for their particularized expertise in the area of fiduciary duty law and have expressed a strong interest in its uniform application. *See, e.g., Rosen v. Wind River Sys., Inc.*, 2009 Del. Ch. LEXIS 114, at 24 (Del. Ch. Jun. 26, 2009) (refusing to defer to an earlier-field California action, because the case implicated "important aspects of Delaware law").

Federal courts consistently recognize and defer to that interest. *See, e.g., In re English Seafood (USA), Inc.,* 743 F. Supp. 281, 288-289 (D. Del. 1990) (abstaining from deciding a corporate dissolution dispute for reasons of comity because Delaware "has a strong interest in the formation and termination of corporations under its laws and in the uniform development and

application of the statutory scheme that the state legislature and courts have created to regulate those corporations."). That is particularly the case where, as here, Plaintiffs' claims may be interpreted to raise novel or complex issues of state law relating to the legal standards applicable to Plaintiffs' claims. *See Kolari*, 455 F.3d at 124 ("We have repeatedly held that a district court particularly abuses its discretion when it retains jurisdiction over state-law claims raising unsettled questions of law following dismissal of all original-jurisdiction claims."). *See also* 8 U.S.C Section 1367(c)(1) (district courts may decline the exercise of supplemental jurisdiction when "the claim raises a novel or complex issue of state law").

### 2. Judicial Economy, Fairness And Convenience Support Dismissal

Considerations related to judicial economy, fairness and convenience also indicate that it would be improper to exercise supplemental jurisdiction. This case has just begun. No discovery has been taken, and no dispositive motions have been filed. In this regard, it is less advanced than the case at issue in *Kolari,* in which the Second Circuit held that it was improper to exercise supplemental jurisdiction despite the fact that substantive motions had already been litigated.

Moreover, as *Gibbs* and *Cohill* make clear, subject matter jurisdiction remains an issue subject to revisiting throughout the litigation. It would be both wasteful and unfair to force the parties to litigate the claims asserted in the CAC before this Court for some period of time, only to have this Court or an appellate court later determine that the exercise of supplemental jurisdiction was improper.

There is also no risk that the streamlining and consolidation of the various Plaintiffs' claims that has already occurred in this litigation will unravel following entry of an order granting this Motion. Each of the Plaintiffs have indicated their willingness to jointly re-file the

CAC in Delaware, thereby obviating the risk that Defendants will unfairly face disparate litigation by the Plaintiffs if this Motion were granted. Indeed, the Court may formalize Plaintiffs' commitment to jointly re-file in Delaware as a condition of dismissal in its order, if it so chooses. In that regard, the Court's "hourglass" concern expressed at the Pre-Motion Conference will be alleviated.

The convenience of the parties would also be unaffected if this case were litigated in a Delaware state court. B of A is the largest bank in the country with operations in all 50 states. It cannot credibly claim hardship litigating in the courts of its state of incorporation. Indeed, a cursory search of the Delaware dockets indicates that B of A (whether Bank of America Corporation, Bank of America N.A., or other affiliated or subsidiary companies) is currently litigating at least 30 cases in the Delaware Chancery Court.

### a. Plaintiffs' Claims Are Most Related To Actions Pending In States Across The Country

To the extent Plaintiffs' claims are related to any preexisting actions, those actions are not pending in this Court. As discussed in the CAC, B of A is currently facing a deluge of nationwide federal and state investigations and litigation regarding its mortgage servicing misconduct, which occurred in the 50 states. The epicenter of federal investigations is Washington, D.C., while the coordinated AG investigation and negotiations are being led by the Iowa AG. Some AGs (*e.g.,* Delaware and California) are separately investigating B of A, others have threatened to initiate litigation (*e.g.,* Utah and Connecticut), and others are already pursuing claims in their own state courts (*e.g.,* Arizona, Nevada, and Massachusetts). In addition, B of A faces a deluge of nationwide civil litigation brought by homeowners who were victims of B of A's modification and foreclosure-related misconduct.

Obviously, a massive amount of coordination is necessary, and must already be underway. Indeed, the Manual for Complex Litigation sets forth dozens of techniques which can, and are, routinely used in similar situations involving widespread nationwide litigation. As Plaintiffs have expressed to Defendants and the Court previously, to the extent necessary, they are ready, willing and able to fit into that framework of coordination so as to pursue discovery in this action as efficiently as possible. Importantly, however, such coordination is no easier or more efficient if Plaintiffs' claims were required to be litigated in this Court.

### b.      The CAC Has Virtually No Overlap With *PPSERS*

In contrast to the aforementioned actions, which directly implicate B of A's modification and foreclosure-related illegality and might require some form of coordination with discovery related to the CAC, Plaintiff's claims have little in common with those asserted in the *PPSERS* action that is currently pending before this Court:

● The CAC pleads only a breach of fiduciary duty and a contribution claim under Delaware state law. By contrast, the Consolidated Class Action Complaint in *PPSERS* (Docket No. 59) (the "*PPSERS* Complaint") does not allege *any* state law claims, and instead pursues *only* claims under the federal securities laws.

● The CAC focuses entirely on the Board's knowing oversight of B of A's widespread improper and illegal mishandling of residential loan modifications and foreclosures. By contrast, *PPSERS* focuses primarily on alleged misstatements by B of A and its management regarding B of A's financial condition, its securities risk exposure, and its audited financial statements – none of which are at issue in this litigation. Put simply, the CAC is concerned entirely with what the Board, B of A, and its mortgage servicing agents *did* to mortgage borrowers, whereas *PPSERS* is concerned primarily with what B of A, its executives, its accountant, and its underwriters *said* to securities investors.

● The CAC names only B of A Board members. The *PPSERS* Complaint, by contrast, names four B of A executives, 27 financial institutions that served as B of A offering underwriters, and B of A's Big Four outside auditor – none of whom are named in the CAC. Indeed, more than 75% of the defendants in the *PPSERS* action are not named in the CAC.

● These significant parties in the *PPSERS* action who are not named in the CAC will undoubtedly be the focus of the vast majority of discovery efforts and pretrial motion practice, absolutely none of which is relevant to the claims at issue in this case.

16

● There are also considerable differences in the remedies sought in the CAC as versus the *PPSERS* complaint. *PPSERS* seeks certification of a nationwide class of purchasers or acquirers of B of A common stock or common equivalent securities. This action is a derivative suit, such that the issue of demand futility, not class certification, will be heavily litigated.

● Beyond that, *PPSERS* seeks compensatory damages, and rescissory damages stemming from violations of the federal securities laws by B of A, its executives, its underwriters and its outside auditors, among others. By contrast, this action seeks compensatory damages, contribution , indemnification, and payback of compensation against only B of A's Board and only stemming from the breaches of fiduciary duty set forth in the CAC. In addition, this action seeks equitable relief, injunctive relief, and a court order aimed at rectifying the mortgage modification- and foreclosure-related improprieties alleged in the CAC. *PPSERS* does not seek any such relief.

● Due to all the foregoing, trial of this action, including pretrial briefing and trial preparation efforts, will have an entirely different focus, scope (narrower) and pacing (faster) than will similar steps in the *PPSERS* action.

For these reasons, there is nothing to gain by disregarding the clear and binding precedent set by *Kolari*, *Cohill*, *Gibbs*, and their progeny in order to artificially retain pendency of this action here. No material convenience or efficiency will be achieved.

### 3.        This Court's Prior Jurisprudence Supports Dismissal

This Court has routinely declined to exercise supplemental jurisdiction in circumstances like those presented here, even where the litigation at issue was further advanced than this case. *See, e.g., Gilmore v. Gilmore*, No. 09 Civ. 6230, 2011 U.S. Dist. LEXIS 99441, at *19 (S.D.N.Y. Sept. 1, 2011) (Pauley, J.) (declining supplemental jurisdiction after discovery was completed, a litany of pretrial disputes were addressed by the court, and a summary judgment motion was decided); *Tradition Chile Agentes de Valores LTDA v. ICAP Secs. USA LLC*, No. 09 Civ. 10343, 2010 U.S. Dist. LEXIS 123673, at *31-32 (S.D.N.Y. Nov. 5, 2010) (Pauley, J.) (declining supplemental jurisdiction following decisions on preliminary injunction and motion to dismiss); *Cedric Kushner Promotions Ltd. v. King*, No. 09 Civ. 6859, 1999 U.S. Dist. LEXIS 14934, at

*12-13 (S.D.N.Y. Sept. 28, 1999) (Pauley, J.) (declining supplemental jurisdiction after motion to dismiss decision).

## V.     Plaintiffs Are Willing To Have Dismissal Conditioned On Reasonable Requirements

Based on all the foregoing, the Court should dismiss this action without prejudice, so that it can be filed in Delaware state court. Given the circumstances here, there is no need to impose conditions on the dismissal of Plaintiffs' claims. However, in order to alleviate any concerns by the Court or Defendants, two conditions to which Plaintiffs would agree are: (1) that Plaintiffs will file a complaint substantially similar to the CAC in Delaware state court within two weeks of entry of an order granting this Motion; and (2) that Plaintiffs will continue to pursue this litigation as a consolidated group, so that the Court's "hourglass" concern is alleviated.

One condition the Court should *not* impose is notice to all shareholders pursuant to Rule 23.1(c). Providing notice is designed to ensure that shareholders can make an informed decision about whether to challenge the "proposed *disposition* of the litigation." 5-23.1  Moore's Federal Practice – Civil § 23.1.10 (2011) (emphasis added).    It derives from the former Rule 23(e), which was interpreted as sufficiently flexible to permit courts to approve dismissals while determining that no notice is required where the dismissal would not result in any prejudice. Here, no notice is required for the simple reason that while this action is being dismissed from this Court, it will continue to be litigated immediately thereafter in the proper forum, Delaware state court. Thus, neither the interest of B of A nor its shareholders will be prejudiced by dismissal. Indeed, the interest of the Company will be prejudiced by requiring notice, because doing so will only delay the resolution of Plaintiffs' claims.

Accordingly, the Court should dismiss without notice.

**CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that this Court grant their

Motion and dismiss this action without prejudice.

Dated:  New York, New York
       February 3, 2012

 

**POMERANTZ HAUDEK GROSSMAN &
   GROSS LLP**

By:_____/s/ Jason S. Cowart_____
Marc I. Gross
Jason S. Cowart
Jeremy A. Lieberman
Matthew L. Tuccillo
100 Park Avenue, 26th Floor
New York, NY 10017
Tel:  (212) 661-1100
Fax: (212) 661-8665

**POMERANTZ HAUDEK GROSSMAN &
   GROSS LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL  60603
Tel:  (312) 377-1181
Fax: (312) 377-1184

*Plaintiffs' Lead Counsel and*
*Attorneys for Plaintiffs American European*
*Insurance Company and Rutgers Casualty*
*Insurance Company*

**JOHNSON & WEAVER, LLP**
Frank J. Johnson , Jr.
Shawn E. Fields
110 West A Street
Suite 750
San Diego, CA 92101
Tel:  (619) 230-0063
Fax: (619) 230-0063

*Attorneys for Plaintiff Jean Marie Cinotto*

**EMERSON POYNTER LLP**
John G. Emerson , Jr.
830 Apollo Lane
Houston, TX 77058
Tel:  (281) 488-8854
Fax: (281) 488-8867

**EMERSON POYNTER LLP**
Scott E. Poynter
500 President Clinton Ave., Suite 305
Little Rock, AR 72201
Tel:  (501) 907-2555
Fax: (501) 907-2556

**JIGARJIAN LAW OFFICE**
Robert A. Jigarjian
128 Tunstead Avenue
San Anselmo, CA 94960
Tel:  (415) 341-6660

*Attorneys for Plaintiff Doris Gastineau*

**PASKOWITZ & ASSOCIATES**
Laurence D. Paskowitz
60 East 42nd Street, 46th Floor
New York, NY 10165
Tel:  (212)-685-0969
Fax: (212)-685-2306

**ROY JACOBS & ASSOCIATES**
Roy L. Jacobs
60 East 42nd Street, 46th Floor
New York, NY  10165
Tel:  (212) 867-1156
Fax: (212) 504-8343

*Attorneys for Plaintiff Richard Delman*

**BRANDSTETTER STRANCH &
JENNINGS PLLC**
James G. Stranch III
J. Gerard Stranch IV
227 Second Avenue North
Nashville, TN 37201
Tel:  (615) 254-8801
Fax: (615) 255-5419

*Attorneys for Plaintiff John H. Cottrel*