UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE BANK OF AMERICA MORTGAGE SERVICING SHAREHOLDER DERIVATIVE LITIGATION | ) ) ) ) ) | Lead Case No. 1:11-cv-02475-WHP<br><br>MASTER FILE |
| This Document Relates To:<br>   ALL ACTIONS | ) ) ) ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
<u>SEEKING VOLUNTARY DISMISSAL WITHOUT PREJUDICE</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    Defendants Will Not Suffer "Legal Prejudice" ........................................................ 2

    II.   Plaintiffs' Reasons For Seeking Dismissal Are Appropriate .................................. 5

    III.  This Court Lacks Subject Matter Jurisdiction ........................................................ 6

        A.  There Is No Diversity Jurisdiction ................................................................ 6
        B.  The Court Lacks Supplemental Jurisdiction .................................................. 7
        C.  The Court Lacks Federal Question Jurisdiction ............................................ 8

    IV.  The Parties Can Agree On Reasonable Conditions Of Dismissal ......................... 9

        A.  The Parties Have Essentially Agreed On Several Reasonable
            Conditions ..................................................................................................... 9
        B.  The Court Should Not Impose Costs On Plaintiffs
            As A Dismissal Condition ............................................................................ 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Achtman v. Kirby, McInerny & Squire, LLP*,
    404 F. Supp. 2d 540 (S.D.N.Y. 2006) ................................................................................7

*Carnegie-Mellon University v. Cohill*,
    484 U.S. 343 (1988) ............................................................................................................8

*D'Alto v. Dahon California, Inc.*,
    100 F.3d 281 (2d Cir. 1996) ...............................................................................................2

*Garbie v. Chrysler Corp.*,
    8 F. Supp. 2d 814 (N.D. Ill. 1998) .....................................................................................7

*Gonzalez v. J.C. Penney Corp, Inc.*,
    No. 05-22254, 2005 U.S. Dist. LEXIS 44840 (S.D. Fla. Nov. 7, 2005) ...........................7

*Kolari v. New York-Presbyterian Hospital*,
    455 F.3d 118 (2006) .......................................................................................................7, 8

*Koster v. America Lumbermens Mutual Casualty Co.*,
    300 U.S. 518 (1947) ............................................................................................................7

*La. Stadium & Exposition District v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    626 F.3d 156 (2d Cir. 2010) ...............................................................................................3

*Mauro v. S. New England Telecommunications, Inc.*,
    208 F.3d 384 (2d Cir. 2000) ...............................................................................................8

*Mizuna, Ltd. v. Crossland Federal Sav. Bank*,
    90 F.3d 650 (2d Cir. 1996) .................................................................................................8

*Rockwell International Corp. v. U.S.*,
    549 U.S. 457 (2007) ............................................................................................................6

*Rufu v. Collier*,
    No. 06-3531 (NLH), 2008 U.S. Dist. LEXIS 22936 (D.N.J. Mar. 20, 2008) ....................6

*United Mine Workers of America v. Gibbs*,
    383 U.S. 715 (1966) ............................................................................................................8

Plaintiffs American European Insurance Company ("AEIC"), Rutgers Casualty Insurance Company, Jean Marie Cinotto, Doris Gastineau, John H. Cottrell, and Richard Delman (collectively "Plaintiffs"), by and through their undersigned counsel, respectfully submit this Reply Memorandum of Law in Support of their Motion Seeking Voluntary Dismissal Without Prejudice (Docket No. 51) ("Plaintiffs' Motion").

## INTRODUCTION

Defendants' brief is heavy on accusation, but light on legal or factual support. Defendants contend, for example, that their prior motions to transfer/stay Plaintiffs' various lawsuits into a *single* court will be wasted if Plaintiffs' Motion is granted, but they ignore that Plaintiffs have repeatedly committed to pursue this litigation on a unified basis in Delaware state court. Similarly, Defendants assert that efficiencies will be lost if Plaintiffs' claims are litigated in a different forum than *PPSERS*, but willfully disregard the overarching differences between the *PPSERS* complaint and the CAC and, even more importantly, Plaintiffs' agreement to coordinate what little discovery might overlap between the two actions.

Defendants' claims about Plaintiffs' motives are even less credible. Plaintiffs' initial, independent decisions regarding claims and forums were all reasonable. Once Plaintiffs' cases were all pending in this Court, and they had agreed to stipulate as to consolidation, they immediately began extensive discussions and research about a consolidated pleading, including whether federal claims should be alleged. Plaintiffs initiated these efforts well before the Court revised its Consolidation Order, and they were not impacted by that revision. In the end, all Plaintiffs agreed with Lead Counsel's consistent belief that it was not in B of A's interest to pursue federal claims. Once this decision was made, Plaintiffs immediately informed

1

Defendants and the Court that their claims were most appropriately litigated in Delaware state court. Defendants' assertions to the contrary are baseless.

Any doubt about whether to reject Defendants' arguments in opposition to Plaintiffs' Motion is eliminated when one considers what they suggest that Plaintiffs should have done differently. In arguing that Plaintiffs' claims must remain in this Court, Defendants contend that Plaintiffs should have artificially manufactured federal jurisdiction by: asserting federal claims in the CAC that they did not believe were in the best interests of B of A; dropping consolidated Plaintiffs from the CAC over their objection; contending that Plaintiffs' contribution and indemnification claim arises out of federal law, even though it clearly does not; or asking the Court to exercise supplemental jurisdiction over the CAC even though a mountain of jurisprudence indicates that such an exercise would be inappropriate under the circumstances. None of these steps were appropriate, required, or served any *bona fide* interest of B of A.

Plaintiffs' Motion should the granted. The only real question is what conditions should be attached to dismissal. Plaintiffs are willing to accept most of Defendants' suggested conditions, with some minor modifications. Plaintiffs are not willing to agree, however, to pay Defendants' consolidation-related fees and expenses. Defendants' request in this regard not only lacks any legal support, it ignores the fact that their consolidation efforts were not wasted.

## ARGUMENT

**I.      Defendants Will Not Suffer "Legal Prejudice"**

Defendants do not come close to establishing legal prejudice. Re-filing this litigation in Delaware does not inflict legal prejudice. "The United States Supreme Court recognized long ago that starting a litigation all over again does not constitute legal prejudice." *D'Alto v. Dahon California, Inc.*, 100 F.3d 281, 283 (2d Cir. 1996), *citing Jones v. S.E.C.*, 298 U.S. 1, 19 (1936).

More specifically, granting Plaintiffs' Motion will not render Defendants' prior procedural motions wasteful. Indeed, in making this argument, Defendants willfully ignore Plaintiffs' repeated commitment: (a) to litigate their claims in Delaware on a consolidated basis, by filing a single, unified complaint substantially similar to the CAC and (b) to coordinate discovery with *PPSERS* (and other related litigation pending nationwide) to the unlikely extent there is any real overlap between the two actions. These commitments ensure that Defendants' efforts to consolidate all of Plaintiffs' claims into a single forum will not at all be wasted. Moreover, it guarantees that they will not suffer *any* prejudice if Plaintiffs' Motion is granted.

In this regard, the facts at issue are wholly unlike those in *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 626 F.3d 156, 159-160 (2d Cir. 2010), cited by Defendants. *See* Opp. at 12-13. In *La. Stadium*, the plaintiff waited almost a year before moving to compel arbitration. Here, Plaintiffs moved to voluntarily dismiss shortly after the underlying actions were consolidated and the day after the CAC was filed. Defendants' assertion that Plaintiffs waited "eight months" (Opp. at 10) is just wrong. Most of the underlying cases were not even pending in this Court eight months prior. Indeed, Lead Counsel did not re-file its action here until the end of September 2011. Thus, unlike *La. Stadium*, there was no delay between the time Plaintiff could have filed their Motion and the time they actually did. Moreover, in *La. Stadium*, defendants had answered the complaint and served a 19-page, single-spaced letter outlining its deficiencies. The *La. Stadium* court found that it would be prejudicial to allow plaintiff then to arbitrate those claims, because arbitration rules precluded the defendants from litigating those deficiencies through a motion to dismiss. Here, no similar prejudice exists.

Defendants' claim that that they will suffer legal prejudice if Plaintiffs' claims are adjudicated in a different forum than *PPSERS* (Opp. at 10-12) also lacks factual support.

Discovery and trial of *PPSERS* will have minimal (if any) overlap with this Action. The *PPSERS* plaintiffs allege federal securities fraud claims against 40+ defendants (including 27 investment banks, B of A's auditor, and B of A executives) concerning the veracity of their public statements about: (1) B of A's reliance on a mortgage processing and tracking system known as MERS; and (2) its exposure to mortgage-backed securities repurchase claims that arose due to *pre-2008* loan origination and securitization misconduct. *See PPSERS* Consolidated Class Action Complaint (*PPSERS* Docket No. 59) ("*PPSERS* Complaint") at ¶1. Plaintiffs, in stark contrast, allege state law claims against B of A Board members concerning their *post-November 2008*, knowing authorization of its widespread mortgage foreclosure- and modification-related illegality. The *PPSERS* plaintiffs must establish scienter, fraud on the market, loss causation and economic loss, inapplicability of the PSLRA safe harbor, and class certification. Plaintiffs here have no such requirements. Indeed, Defendants concede, as they must, that there are huge disparities between the parties, claims, procedural allegations, liability predicates, and relief sought in the CAC and the *PPSERS* Complaint.

Undeterred by these dispositive facts, however, Defendants cherry-pick a few instances where *PPSERS*'s factual allegations may overlap with a handful of paragraphs (as spun by Defendants) from the CAC. *See* Defendants' Memorandum ("Opp.") at 11-12. However, a more fulsome comparison of the 70-page CAC and the 137-page *PPSERS* Complaint illustrates just how little they actually overlap. *See* Exhibit A (chart illustrating differences between the two complaints). That is true even as regards their factual allegations. *Id.* at 2- 3 (listing topics that are entirely non-overlapping or given substantially different weight). Indeed, given the otherwise cavernous disparities between the CAC and the *PPSERS* Complaint, whatever *de minimus* overlap exists cannot sustain Defendants' argument.

Finally, arguing "there can be no question that efficiencies can be gained by coordinating these suits in a single forum," Defendants describe such purported efficiencies in only the broadest of brushstrokes. *See* Opp. at 12. Faced with Plaintiffs' repeated offer to coordinate their Delaware litigation, such generalities are insufficient.

## II. Plaintiffs' Reasons For Seeking Dismissal Are Appropriate

There is nothing inconsistent or suspect about Plaintiffs' initial decisions about where to file their cases and their subsequent, post-consolidation decision to seek voluntary dismissal to litigate in Delaware. *See* Opp. at 1-3, 10, 13-17, 19-20. Plaintiff AEIC originally filed in North Carolina state court, which at that time appeared to have an interest equally as strong as Delaware's, given that B of A's headquarters and home loans segment are located there. All other Plaintiffs initially filed in federal courts because they initially brought federal claims, which could not be filed in any state court. To suggest that counsel who originally filed such federal claims could have known then that they would later work under a yet-to-be-court-appointed Lead Counsel whose opinion strongly differed regarding those claims defies credulity.

Plaintiffs' conduct after their cases were filed in, or transferred to, this Court is equally unassailable. Once Plaintiffs agreed to consolidate, they assumed the Court would set a short deadline to file a consolidated pleading and immediately began discussions and research about whether to pursue federal claims. This was the first time that Plaintiffs had an opportunity to work together, in a single group, toward a unified vision for this litigation. That work started even before the Court entered the *initial* Consolidation Order and continued until the CAC was finalized and filed. Ultimately, Lead Counsel's long-standing view regarding federal claims prevailed, and such claims were not pursued in the CAC. This process was proper and effective.

In light of the resulting lack of federal jurisdiction, Plaintiffs believed they had only one option – to seek to voluntarily dismiss and thereafter litigate in state court. North Carolina had already "taken a pass" on this litigation, by staying AEIC's prior action.

Against this backdrop, Defendants accuse Plaintiffs of "forum shopping," a desire to "escape" this Court, and or secretly conspiring to rewrite this Court's revised Consolidation Order. *See, e.g.,* Opp. at 16-17. Defendants do not – and cannot – cite to any facts that support these claims, while ignoring the facts that are the most relevant.

## III. This Court Lacks Subject Matter Jurisdiction

### A. There Is No Diversity Jurisdiction

Defendants' argument about diversity jurisdiction completely ignores the effect of ¶6 of the Court's Consolidation Order, which made clear that the CAC "supercedes all complaints filed in any of the actions consolidated herein." That Order is dispositive. Moreover, even if the matter were still in dispute, Defendants' cited cases all predate *Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457 (2007), upon which Plaintiffs rely. As such, Defendants cite no legal precedent that limits *Rockwell*'s clear-as-day holding that subject matter jurisdiction is judged based upon the consolidated complaint. Contrary to Defendant's argument (*see* Opp. at 18), there is no exception under *Rockwell* for "diversity jurisdiction in consolidated lawsuits."

Even assuming, *arguendo*, that the Consolidation Order was silent (which it is not) and that *Rockwell* did not govern (which it does), Defendants' suggestion (Opp. at 18-19) that individual Plaintiffs should be dropped from their CAC to manufacture diversity is improper. Plaintiffs strongly desire to pursue their claims and should not be dismissed from this litigation against their will. *See, e.g., Rufu v. Collier*, No. 06-3531 (NLH), 2008 U.S. Dist. LEXIS 22936, at *12 (D.N.J. Mar. 20, 2008) ("torturing the facts or amending a pleading to create diversity" is

6

improper in a derivative lawsuit). *Cf., e.g., Garbie v. Chrysler Corp.*, 8 F. Supp. 2d 814, 817-818 (N.D. Ill. 1998) ("As masters of their complaint, plaintiffs may use Rule 21 to dismiss non-diverse parties from an action to preserve diversity jurisdiction. Rule 21 has not, however, been used in the reverse '…to dismiss properly joined plaintiffs, despite their objections, solely to permit a defendant to acquire federal jurisdiction…'"); *Gonzalez v. J.C. Penney Corp, Inc.*, No. 05-22254, 2005 U.S. Dist. LEXIS 44840, *5 (S.D. Fla. Nov. 7, 2005) ("[E]ven if nondiverse parties 'were added to prevent removal, that is [plaintiff's] privilege; plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum."). Lead Counsel has benefitted and will continue to benefit significantly from the substantive contributions, manpower, and resources of other Plaintiffs' counsel. In addition, these Plaintiffs provide insurance that the requirement of continuous stock ownership will be maintained throughout this litigation. Finally, the error of Defendants suggestion is reinforced by the fact that, if Plaintiffs were dropped, they would be free to re-file the case in Delaware state court, leading to the very multi-jurisdictional scenario Defendants' wish to avoid.

Defendants' cited cases do not counsel otherwise. *See* Opp. at 18-19. In *Achtman v. Kirby, McInerny & Squire, LLP*, 404 F. Supp. 2d 540, 548 (S.D.N.Y. 2006), the court said, in *dicta*, that out of 73 named class action plaintiffs, it could consider dropping 13 who were non-diverse, where there was a compelling reason to keep the case in federal court. Neither that court nor the court in *Koster v. Am. Lumbermens Mut. Cas. Co.*, 300 U.S. 518 (1947) (a *forum non conveniens* case) dropped any plaintiff to manufacture diversity jurisdiction for a derivative suit.

### B. The Court Lacks Supplemental Jurisdiction

In arguing that the Court can exercise supplemental jurisdiction over the CAC (Opp. at 19-20), Defendants entirely ignore the extensive discussion in Plaintiffs' Memo of *Kolari v. New*

7

*York-Presbyterian Hosp.*, 455 F.3d 118 (2006), *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988), and *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966). *Id.* at 11-13. They also ignore the many cases Plaintiffs cited where this Court declined to exercise supplemental jurisdiction over actions far more advanced than this one. *Id*. at 17-18. Under all this precedent, it simply would be improper for this Court to exercise supplemental jurisdiction over the CAC.

Instead, Defendants cite to two cases that predate *Kolari*, both of which are readily distinguishable and do not counsel a different result. In *Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384 (2d Cir. 2000), the court exercised supplemental jurisdiction over state law claims only to dismiss them along with the federal claims on summary judgment. In *Mizuna, Ltd. v. Crossland Fed. Sav. Bank*, 90 F.3d 650, 657 (2d Cir. 1996), the case was much more advanced than Plaintiffs' case here, insofar as "three judicial officers had already expended substantial resources on the case over a year's time, and an order had issued that contemplated an imminent resolution" by the time the court exercised supplemental jurisdiction. Moreover, unlike Plaintiffs here, by seeking remand, the plaintiff in *Mizuna* was engaged in a "fairly bald effort to avoid an unfavorable outcome that the court had already foreshadowed." *Id.*

C. **The Court Lacks Federal Question Jurisdiction**

Plaintiffs' contribution and indemnification claim seeks to hold the Board liable for harms caused by the "facts and circumstances ***as are alleged herein***" and "***on account of the wrongful acts and practices related to the misconduct described above***." *See* ¶155. It is thus expressly limited to the misconduct and harms alleged in the CAC, which alleges that the Board breached fiduciary duties by knowingly permitting B of A to engage in widespread residential loan modification- and foreclosure-related improprieties and illegalities. The CAC does *not* allege fiduciary breaches for causing or permitting §10(b) violations. Thus, Defendants' federal

question argument (Opp. at 20-21) fails. If, however, the Court deems it necessary, its dismissal order can be conditioned so as to address any remaining concerns, as discussed below.

## IV. The Parties Can Agree On Reasonable Conditions Of Dismissal

### A. The Parties Have Essentially Agreed On Several Reasonable Conditions

The parties have largely agreed on several reasonable conditions of dismissal. *See* Plaintiffs' Motion at 18; Opp. at 5, 21-22. They are that: (1) Plaintiffs will re-file this action in the Delaware Chancery Court; (2) Plaintiffs and their counsel will continue to pursue this litigation as a consolidated group behind a file a single unified pleading, so that the Court's "hourglass" concern is addressed; (3) the Delaware complaint will be substantially similar to the CAC (as discussed below); and (4) Lead Counsel will seek the dismissal of the stayed North Carolina action, with the assent of Defendants and without notice to B of A's shareholders.

In the Delaware complaint, Plaintiffs will more expressly limit their contribution and indemnification claim to the conduct at issue therein, to avoid any future ambiguity or confusion on the part of Defendants. Plaintiffs are also willing to agree not to pursue claims based on alleged misrepresentations in B of A's SEC filings, so long as this condition expressly provides that Plaintiffs may bring such claims if they learn new facts indicating that such claims are viable. Requiring any greater commitment from Plaintiffs as a condition of dismissal would improperly restrict their and their counsel's ability to ethically react to new developments.

This is a robust slate of conditions that far exceeds the norm for voluntary dismissals.

### B. The Court Should Not Impose Costs On Plaintiffs As A Dismissal Condition

The Court should not impose costs on Plaintiffs as a dismissal condition. Defendants fail to cite a single case in support of this extraordinary – and unwarranted – penalty. *See* Opp. at 5, 21-22. Defendants' procedural goal to date was to get all Plaintiffs to unify behind a single, consolidated pleading that could be tested on a motion to dismiss. That goal will be vindicated

9

whether this action is litigated in Delaware or here. Defendants cannot point to a single failure by Plaintiffs or their counsel, save for lack of clairvoyance that circumstances would later dictate that Delaware be the most appropriate forum in which to litigate the consolidated action as alleged in the CAC. As discussed *supra*, when acting independently pre-consolidation, the decisions by each Plaintiff and their counsel as to claims and forums were all reasonable.

## CONCLUSION

For these reasons, and those set forth in Plaintiffs' Memo, Plaintiffs respectfully request that this court grant their Motion, without prejudice, without class-wide notice, with the conditions outlined *supra*, and without costs awarded to Defendants.

Dated: New York, New York
      February 22, 2012

**POMERANTZ HAUDEK GROSSMAN & GROSS LLP**

By: /s/ Jason S. Cowart
Marc I. Gross
Jason S. Cowart
Jeremy A. Lieberman
Matthew L. Tuccillo
100 Park Avenue, 26th Floor
New York, NY 10017
Tel: (212) 661-1100
Fax: (212) 661-8665

**POMERANTZ HAUDEK GROSSMAN & GROSS LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Tel: (312) 377-1181
Fax: (312) 377-1184

*Plaintiffs' Lead Counsel and Attorneys for Plaintiffs American European Insurance Company and Rutgers Casualty Insurance Company*

**JOHNSON & WEAVER, LLP**
Frank J. Johnson, Jr.
Shawn E. Fields
110 West A Street
Suite 750
San Diego, CA 92101
Tel: (619) 230-0063
Fax: (619) 230-0063

*Attorneys for Plaintiff Jean Marie Cinotto*

**EMERSON POYNTER LLP**
John G. Emerson, Jr.
830 Apollo Lane
Houston, TX 77058
Tel: (281) 488-8854
Fax: (281) 488-8867

**EMERSON POYNTER LLP**
Scott E. Poynter
500 President Clinton Ave., Suite 305
Little Rock, AR 72201
Tel: (501) 907-2555
Fax: (501) 907-2556

**JIGARJIAN LAW OFFICE**
Robert A. Jigarjian
128 Tunstead Avenue
San Anselmo, CA 94960
Tel: (415) 341-6660

**GILMAN AND PASTOR, LLP**
David Pastor
63 Atlantic Avenue
3rd Floor
Boston, MA 02110
Tel: (617) 742-9700

*Attorneys for Plaintiff Doris Gastineau*

**PASKOWITZ & ASSOCIATES**
Laurence D. Paskowitz
60 East 42nd Street, 46th Floor
New York, NY 10165
Tel: (212)-685-0969
Fax: (212)-685-2306

**ROY JACOBS & ASSOCIATES**
Roy L. Jacobs
60 East 42nd Street, 46th Floor
New York, NY 10165
Tel: (212) 867-1156
Fax: (212) 504-8343

*Attorneys for Plaintiff Richard Delman*

**BRANDSTETTER STRANCH &
JENNINGS PLLC**
James G. Stranch III
J. Gerard Stranch IV
227 Second Avenue North
Nashville, TN 37201
Tel: (615) 254-8801
Fax: (615) 255-5419

*Attorneys for Plaintiff John H. Cottrel*