UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
IN RE BANK OF AMERICA MORTGAGE :
SERVICING SHAREHOLDER DERIVATIVE
LITIGATION : 11 Civ. 2475 (WHP)

: MEMORANDUM & ORDER

----------------------------------X
:
This Document Relates To:
:
ALL ACTIONS
----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/4/12

WILLIAM H. PAULEY III, District Judge:

    Plaintiffs Jean Marie Cinotto ("Cinotto"), Doris Gastineau ("Gastineau"), American European Insurance Company ("AEIC"), Rutgers Casualty Insurance Company ("RCIC"), John H. Cottrell ("Cottrell"), and Richard Delman ("Delman") (collectively, "Plaintiffs") bring this consolidated shareholder derivative lawsuit on behalf of nominal defendant Bank of America Corporation ("BoA") and against past and present members of BoA's board of directors (collectively, "Defendants").[1] Plaintiffs move pursuant to Federal Rule of Civil Procedure 41 for voluntary dismissal of this consolidated action without prejudice. For the following reasons, Plaintiffs' motion is granted.

---

[1] Specifically, Plaintiffs assert claims against Brian T. Moynihan, Charles O. Holliday, Susan S. Bies, William P. Boardman, Frank F. Bramble, Virgis W. Colbert, Charles K. Gifford, D. Paul Jones, Jr., Monica C. Lozano, Thomas J. May, Donald E. Powell, Charles O. Rossotti, and Robert W. Scully.

## BACKGROUND

### I. Lawsuits Prior to Consolidation

In March 2011, AEIC and another plaintiff filed two separate shareholder derivative actions in North Carolina state court against BoA board members, alleging breach of fiduciary duty, gross mismanagement, abuse of control, and waste of corporate assets (collectively, "the North Carolina Actions"). (Declaration of Scott D. Musoff, dated Feb. 14, 2012 ("Musoff Decl."), Ex. B at 2-3.) Those claims centered around BoA's alleged mishandling of foreclosures. (Musoff Decl., Ex. B at 3.)

In April 2011, Cinotto filed a shareholder derivative action in this Court arising from BoA's alleged mishandling of foreclosures and its concealment of that failure. See Cinotto v. Noski, et al., No. 11 Civ. 2475 (S.D.N.Y.). Cinotto asserted federal securities claims and state claims for breach of fiduciary duty, unjust enrichment, and corporate waste. This Court accepted Cinotto as related to a federal securities class action titled Pennsylvania Public School Employees' Retirement System v. Bank of America Corporation et al., 11 Civ. 733 (S.D.N.Y.) ("PPSERS"). In summer 2011, Gastineau and Cottrell filed two additional shareholder derivative actions in the District of Massachusetts arising from BoA's foreclosure practices (collectively, "the Massachusetts Actions"). See Gastineau v. Gifford et al., No. 11 Civ. 11096 (D. Mass.); Cottrell v. Gifford et al., No. 11 Civ. 11312 (D. Mass.). Those suits alleged federal securities violations and breaches of fiduciary duty.

In August 2011, the North Carolina state court stayed the North Carolina Actions pending resolution of Cinotto. (Musoff Decl., Ex. B at 7.) In September 2011, the Massachusetts federal court transferred the Massachusetts Actions to this Court. (Musoff Decl.,

Ex. C at 3, 5.) That same month, Delman filed a shareholder derivative lawsuit in this Court based on BoA's foreclosure practices. See Delman v. Gifford et al., No. 11 Civ. 6749 (S.D.N.Y.). Delman asserted federal securities and breach of fiduciary duty claims.

Several days later, AEIC and RCIC together filed another shareholder derivative action in this Court, arising from similar facts. See Am. European Ins. Co. & Rutgers Cas. Ins. Co. v. Moynihan, et al., No. 11 Civ. 6851 (S.D.N.Y.). AEIC and RCIC brought claims identical to the ones AEIC asserted in the North Carolina Actions—breach of fiduciary duty, gross mismanagement, abuse of control, and waste of corporate assets.

II. The Current Consolidated Action

By Order dated November 3, 2011, this Court consolidated Gastineau v. Gifford et al., No. 11 Civ. 6548; Cottrell v Gifford et al., 11 Civ. 6547; Cinotto v. Noski et al., No. 11 Civ. 2475; Delman v. Gifford et al., No. 11 Civ. 6749; and Am. European Ins. Co. & Rutgers Cas. Insurance Co. v. Moynihan, et al., No. 11 Civ. 6851. (ECF No. 27 at ¶ 1.) Initially, this Court adopted Plaintiffs' proposed leadership structure, which included three co-lead counsel and a five-member executive committee. (ECF No. 27 at ¶¶ 7-9.) After expressing reservations regarding Plaintiffs' complex leadership structure, this Court entered a Revised Order of Consolidation ("Consolidation Order") on December 12, 2011, naming Pomerantz Haudek Grossman & Gross LLP as lead plaintiffs' counsel ("Lead Counsel"). (ECF No. 31 at ¶ 7.)

On December 21, 2011, Plaintiffs filed a Consolidated Amended Complaint ("CAC") alleging claims for breach of fiduciary duty, indemnification, and contribution. (ECF No. 32.) The following day, Plaintiffs requested a pre-motion conference in contemplation of a motion for voluntary dismissal without prejudice. (ECF No. 34.) Plaintiffs assert that this Court

no longer has subject matter jurisdiction over the consolidated action because the CAC pleads only state law claims and the parties are not diverse. Plaintiffs intend to proceed as a single group and re-file in Delaware Chancery Court if the Court grants their motion for voluntary dismissal.

## DISCUSSION

A derivative action may be "dismissed at the plaintiff's request only by court order . . . ." Fed. R. Civ. P. 41(a)(2); see also Fed. R. Civ. P. 23.1(c). "Although voluntary dismissal without prejudice is not a matter of right, the presumption in this circuit is that a court should grant a dismissal pursuant to Rule 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a result." Banco Cent. de Para. v. Para. Humanitarian Found., Inc., No. 01 Civ. 9649 (JFK), 2006 WL 3456521, at *2 (S.D.N.Y. Nov. 30, 2006). In determining whether a defendant will suffer substantial prejudice, courts consider (1) "the plaintiff's diligence in bringing the motion"; (2) "any undue vexatiousness on plaintiff's part"; (3) "the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial"; (4) "the duplicative expense of relitigation"; and (5) "the adequacy of plaintiff's explanation for the need to dismiss." Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir. 1990) (internal quotation marks omitted); see also Ibeto Petrochem. Indus. Ltd. v. M/T Beffen, 475 F.3d 56, 61 (2d Cir. 2007).

I. Plaintiffs' Diligence in Bringing the Motion

When assessing a plaintiff's diligence, courts consider the length of time the action has been pending. See Omega Inst., Inc. v. Universal Sales Sys., Inc., No. 08 Civ. 6473

(MAT), 2010 WL 475287, at *3 (W.D.N.Y. Feb. 5, 2010). This factor weighs in Plaintiffs' favor because the individual actions had been pending before this Court for three to eight months prior to Plaintiffs' motion. See Omega, 2010 WL 475287, at *3 (finding diligence in moving for dismissal within a year after action began). Moreover, Plaintiffs alerted the Court of their proposed motion the day after they filed the CAC, which was the earliest time that Plaintiffs could have moved for dismissal. See U.S. Underwriters Ins. Co. v. United Pacific Assoc., LLC, No. 05 Civ. 1012 (JFB), 2006 WL 2038507, at *2 (E.D.N.Y. July 19, 2006).

II. Undue Vexatiousness

"In determining whether a party was unduly vexatious in pursuing its claim, courts consider whether the party had ill-motive." Shaw Family Archives, Ltd. v. CMG Worldwide, Inc., No. 05 Civ. 3939 (CM), 2008 WL 4127549, at *6 (S.D.N.Y. Sept. 2, 2008) (internal quotation marks omitted). "[C]ourts find ill-motive where plaintiffs have assured the court and the defendants that they intended to pursue their claims prior to seeking a dismissal." Shaw Family Archives, 2008 WL 4127549, at *6 (internal quotation marks omitted). Here, Plaintiffs made no such assurances to the Court or Defendants. And as discussed above, Plaintiffs brought this motion at the earliest possible time. See Shaw Family Archives, 2008 WL 4127549, at *7.

As evidence of ill-motive, Defendants point to the fact that Plaintiffs' motion follows closely in time after this Court's rejection of Plaintiffs' leadership structure. But Plaintiffs provide a reasonable explanation for the timing. Cf. Pac. Elec. Wire & Cable Co. v. Set Top Int'l, Inc., No. 03 Civ. 9623 (JFK), 2005 WL 578916, at *5 (S.D.N.Y. Mar. 11, 2005) (finding vexatiousness where plaintiffs retreated from their position that they would pursue the

case without adequate explanation for the change). Plaintiffs assert that they abandoned their federal securities claims because Lead Counsel always considered it in Plaintiffs' best interest to plead only state law claims. Indeed, the three cases that Lead Counsel filed asserted only state law claims. And when the Court consolidated the various actions, Lead Counsel's view prevailed over differing views. Accordingly, there is no undue vexatiousness on Plaintiffs' part.

III. Suit's Progress

The third Zagano factor—the suit's progress, "including the defendant's effort and expense in preparation for trial"—weighs in Defendants' favor. While discovery has not commenced, this case is nonetheless distinguishable from Ahler v. City of New York, No. 93 Civ. 0056 (SS), 1993 WL 362404, at *1 (S.D.N.Y. Sept. 13, 1993), on which Plaintiffs rely. While the defendants in Ahler had interposed an answer to the complaint, they had not filed any motions or otherwise litigated the action. See 1993 WL 362404, at *1. In contrast, Defendants filed and won procedural motions in the North Carolina and Massachusetts fora. First, Defendants persuaded the North Carolina state court to stay the North Carolina Actions. And second, Defendants expended resources convincing the Massachusetts federal court to transfer the Massachusetts Actions to this Court.

IV. Duplicative Expenses of Relitigation

The fourth Zagano factor, which considers the duplicative expenses of relitigation, weighs in Plaintiffs' favor. While Defendants expended resources centralizing this litigation, those efforts would not be wasted if Plaintiffs prevail on their motion for voluntary dismissal. As a condition of dismissal, Plaintiffs have agreed to proceed as a single group in Delaware Chancery Court. Cf. La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner

& Smith Inc., 626 F.3d 156, 159-60 (2d Cir. 2010).

V. Adequacy of Plaintiffs' Explanation for Dismissal

To justify voluntary dismissal, Plaintiffs argue that this Court lacks subject matter jurisdiction because the CAC alleges only state law violations. Generally, "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." Rockwell Int'l Corp v. United States, 549 U.S. 457, 473-74 (2007). But where a consolidated action is concerned, the Second Circuit has noted that "[r]ights are unaffected even though a consolidated complaint is filed." Cole v. Schenley Indus., 563 F.2d 35, 38 (2d Cir. 1977); see also Katz v. Realty Equity Corp. of N.Y., 521 F.2d 1354, 1358 (2d Cir. 1975); Cabrini Dev. Council v. LCA-Vision, Inc., 197 F.R.D. 90, 96 (S.D.N.Y. 2000), vacated in part on other grounds sub nom. Excimer Assoc., Inc. v. LCA-Vision, 292 F.3d 134 (2d Cir. 2002). Thus, a court must "consider the jurisdictional basis of each complaint separately." Cole, 563 F.2d at 38. Here, the parties agree that diversity jurisdiction exists for four of the five separate actions—Gastineau, No. 11 Civ. 6548; Cinotto, No. 11 Civ. 2475; Delman, No. 11 Civ. 6749; and Am. European Ins. Co. & Rutgers Cas. Insurance Co., No. 11 Civ. 6851. Accordingly, those actions are properly before this Court.[2]

In arguing that the Court should look only to the CAC to assess whether it has jurisdiction, Plaintiffs rely on paragraph six of this Court's Consolidation Order. Paragraph six provides that the CAC will be the "operative complaint and shall supercede all complaints filed

---

[2] The Court rejects Defendants' argument that Plaintiffs' indemnification and contribution claims arise under federal law. The Court also declines to drop parties from this action, as Defendants suggest, to manufacture jurisdiction. See Rufu v. Collier, No. 06 Civ. 3531 (NLH), 2008 WL 801274, at *4 (D.N.J. Mar. 28, 2008).

in any of the actions consolidated herein." (ECF No. 31 ¶ 6.) But this language must be read in context. Paragraph six merely relieves Defendants of the obligation of responding to each complaint. And that provision is unrelated to the jurisdictional question. See Katz, 521 F.2d at 1358 (evaluating jurisdiction based on individual complaints, rather than consolidated complaint, when court did not intend a "physical merger of the actions or the defenses of the separate parties"). Because this Court concludes that it must consider the jurisdictional basis for each complaint separately, it need not address the parties' arguments about whether the Court should exercise supplemental jurisdiction over the CAC.

    The fact that this Court lacks subject matter jurisdiction over the Cottrell action tips this factor in Plaintiffs' favor. If this Court decoupled Cottrell from the other actions, it would spawn mischief. Cottrell could re-file in another jurisdiction and thereby expose Defendants to litigating multiple shareholder derivative actions in multiple jurisdictions. That would open up the possibility of inconsistent verdicts. Thus, while this Court has jurisdiction over four of the five actions, the more judicially economical solution is to grant Plaintiffs' motion with respect to all five actions.

V. Conditions for Dismissal

    This Court grants Plaintiffs' motion for voluntary dismissal without prejudice subject to the following conditions. First, Plaintiffs must file a complaint substantially similar to the CAC in Delaware Chancery Court by April 18, 2012. Second, Plaintiffs must pursue the litigation as a consolidated group with a single pleading. Third, Plaintiffs must not assert any federal securities claims. Finally, Lead Counsel must seek dismissal of the North Carolina Actions with the assent of Defendants.

Plaintiffs are excused from providing shareholders with notice of this dismissal pursuant to Federal Rule of Civil Procedure 23.1(c), provided that they comply with this Court's order and promptly re-file their shareholder derivative lawsuit in Delaware Chancery Court. If Plaintiffs do not re-file in Delaware Chancery Court by April 18, 2012, they are to provide adequate notice of the dismissal of this consolidated action pursuant to Rule 23.1(c). Defendants' application for attorney's fees is denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for voluntary dismissal is granted on the following conditions: (1) Plaintiffs must file a complaint substantially similar to the CAC in Delaware Chancery Court by April 18, 2012; (2) Plaintiffs must pursue the litigation as a consolidated group with a single pleading; (3) Plaintiffs must not assert any federal securities claims; and (4) Lead Counsel must seek dismissal of the North Carolina Actions with the assent of Defendants. The Clerk of the Court is directed to terminate all pending motions and mark this case closed.

Dated: April 4, 2012
New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

Jason Samuel Cowart
Pomerantz Haudek Block Grossman & Gross LLP
100 Park Avenue, 26th Floor
New York, NY 10017
*Lead Counsel for Plaintiffs*

Brian Marc Burnovski
Davis Polk & Wardwell L.L.P.
450 Lexington Avenue
New York, NY 10017
*Counsel for Individual Defendants*

Jay B. Kasner
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
42nd floor
New York, NY 10036
*Counsel for Bank of America Corporation*